(C. D. 930)

SWIFT & Co. *v.* UNITED STATES

United States Customs Court, Third Division

(Decided June 14, 1945)

*Eugene R. Pickrell* (*Eugene A. Chase, William J. Colavito,* and *Eugene R. Pickrell* of counsel) for the plaintiff.

*Paul P. Rao,* Assistant Attorney General (*Harold L. Grossman,* special attorney), for the defendant.

Before CLINE, KEEFE, and EKWALL, Judges

CLINE, Judge: These are suits against the United States arising at the port of New York by protest against the collector's classification of the merchandise as oleo stearin and assessing duty thereon at 1 cent per pound. The plaintiff claims that the merchandise is tallow.

Paragraph 701 of the Tariff Act of 1930 provides:

PAR. 701. * * * tallow, one-half of 1 cent per pound; oleo oil and oleo stearin, 1 cent per pound; * - * * .

In the consular invoices and the bills of lading in these cases the merchandise is described as "extra premier jus." Other papers contain the following descriptions:

| | |
|---|---|
| Department of Agriculture report (Protest #872111–G) | Oleo Stearine |
| Declaration of Owner (Protest #885312–G) | Oleo Stearine |
| Entry (Protest #872111–G) | Extra premier Jus oleo stearine |
| Entry (Protest #885312–G) | Oleo Stearine (extra premier jus) |
| Entry (Protest #884718–G) | Extra premier jus (oleo stearine) |

At the trial, Henry B. Edgar, entry clerk of National Carloading Corporation, testified that he had prepared the entry papers herein; that he had seen the invoice description of the merchandise as extra premier jus; that, as he did not know what the term meant, he had called the Meat Inspection Bureau of the Department of Agriculture, and had been told that it was oleo stearin. He stated that no sample was submitted to the Department and that he entered the merchandise as oleo stearin.

Robert Coons, an employee of Swift & Co., testified that he had prepared the document entitled "Declaration of Owner"; that he had not examined the merchandise in the cases; and that he had obtained the information as to the identity of the product from papers furnished by the broker.

Although descriptions in entries and other documents are admissions against interest and presumptively correct, the importer is not precluded from disproving the correctness of such descriptions. *United States* v. *Wo Kee & Co.*, 21 C. C. P. A. 341, T. D. 46880; *United States* v. *Alex Schechter Corp.*, 25 C. C. P. A. 107, T. D. 49240; *United States* v. *Rockhill & Vietor et al.*, 10 Ct. Cust. Appls. 112, T. D. 38374; *Lee & Co.* v. *United States*, 15 Ct. Cust. Appls. 202, T. D. 42236.

In order to show what the merchandise actually was, plaintiff offered the testimony of Edward G. Kenny, chief chemist for Swift International Laboratories in South America. He stated that premier jus is a rendered edible fat from beef produced by passing raw fats through a cutting machine to make them into strips, after which they are chilled in ice water for 24 hours, then passed through a hashing machine and rendered in steam jacketed kettles for 3 hours at 160° F.; salt is then sprinkled over the top to take out water, and the fat is dropped into holding tanks for shipment or further processing. When the product is further processed, oleo oil and oleo stearin are obtained. Mr. Kenny stated that extra premier jus is a slightly higher grade than premier jus, which is also called oleo stock, and that in a general way premier jus is considered a grade of tallow, although what is ordinarily called tallow is differently processed. Amplifying the latter statement, he testified:

Well, in the early days of processing fats all of the raw fats were rendered and sold as tallow. That general term may still be considered to include all fats. But as manufacturing processes developed the fats were graded into many more grades in which the edible portions were separated and come under the names of premier jus or oleo stock, whereas the remaining inferior portions still carry the name tallow, which go largely to making soap.

In order to determine the nature of the merchandise, a titre test was made under the supervision of the witness to find the solidification point of the material. The following is a brief description of the test. The fatty acids are separated from the material by several operations and are poured into a titre tube, which has been placed

in a wide-mouthed bottle standing in a chamber holding cold water. An official titre thermometer is suspended in the middle of the fatty acids in the titre tube. When the temperature has gone down to 10° C. above the expected titre point, stirring at a rate of 90 to 100 r. p. m. is started and continued until the mercury remains stationary for 30 seconds. Stirring is stopped and the mercury rises. The highest point to which the mercury rises before beginning to descend again is the titre or solidification point in degrees centigrade. The results of the tests made by Mr. Kenny are as follows:

Protest No. 885312–G (Order No. 6196)     45.3° C.
Protest No. 885312–G (Order No. 6198)     45.2° C.
Protest No. 884718–G (Order No. 6250)     45.3° C.

Mr. Kenny testified that samples of the product are drawn from the tanks each day and labeled with the date; that at the end of the week a composite sample is made from those samples; that an analysis is made of each week's production; that the merchandise herein and the analyses thereof are identified by means of the date of production; that the titres of each individual day are quite constant and that one day's production could not have a vastly higher titre than another day's production.

The witness gave the following ranges of titre points:

Oleo stock_____ from 44.80° to 46.30° C.
Oleo stearin_____ from 49° to 52° C.
Oleo oil_____ from 41.50° to 42.50° C.

He also stated that tallow can be distinguished visually from oleo stearin because oleo stearin is of a very white appearance and tallow is of a darker color.

Russel H. Rogers, a chemist in the employ of Swift & Co., produced samples of oleo oil, oleo stock, and oleo stearin and testified that he had analyzed them and obtained the following titre points:

Oleo oil_____ 42.3° C.
Oleo stock_____ 44.9° C.
Oleo stearin_____ 49.8° C.

He further stated that it would not be possible to have an oleo stearin with a titre of 44.8° to 45.3° C.; that such a product would be premier jus, oleo stock, or edible tallow; and that if the product is known to come from beef fat, one can determine whether it is oleo oil, oleo stock, or oleo stearin by the titre point.

There was submitted a deposition of Dewaine Dunnigan, utility man in the oil house of Swift & Co., stating that he had obtained a sample of the shipment marked 6216 (Protest 872111–G) by taking some of the product from every 10 tierces and mixing it thoroughly; that the sample was labeled and sent to the laboratory for analysis.

Arthur R. Fairchild, laboratory technician of Swift & Co., testified by deposition that he had received the sample marked 6216 from

Dewaine Dunnigan and had determined the titre point thereof to be 44.8° C. by the official method of the American Oil Chemists Society (a method which appears to be similar to that described by Mr. Kenny).

In brief, the evidence shows that there are different grades of tallow; that premier jus is a grade of tallow; that oleo stearin is made from premier jus; that whether a beef fat product is premier jus, oleo stearin, or oleo oil is determined by the titre point; that the titre points range from 44.80° to 46.30° C. for premier jus, from 49° to 52° C. for oleo stearin; and from 41.50° to 42.50° C. for oleo oil; that the titre points of the shipments herein were 45.3°, 45.2°, 45.3°, and 44.8° C., respectively. No evidence was offered by defendant nor were any briefs submitted on its behalf.

*Thorpe's Dictionary of Applied Chemistry* lists four commercial brands of tallow (vol. 5, p. 382, 1917 edition):

(1) Rendered tallow, which contains all the fat from the carcase.

(2) "Premier jus."

(3) Pressed tallow (tallow stearine, beef stearine, mutton stearine, oleostearine).

(4) Oleomargarine, oleo oil.

The *Summary of Tariff Information, 1929,* contains the following statement (p. 1031):

Tallow is the hard fats removed from cattle, calves, and sheep, but chiefly from cattle. It is produced in edible and inedible grades. The edible grade, removed in inspected slaughter houses, and considered in this summary to include edible oleo fats, is used almost entirely in the production of oleo oil and stearin. However, the production of edible tallow, reported as such, enters also into lard compounds.

Oleo stearin and oleo stock have been held to be derivatives of tallow and subject to tax under section 701 of the Revenue Act of 1936. *Swift & Co., a corporation* v. *United States,* 27 C. C. P. A. 181, C. A. D. 83; *Swift & Co., a corporation* v. *United States,* 30 C. C. P. A. 171, C. A. D. 230. However, since paragraph 701 of the Tariff Act of 1930 provides for tallow on the one hand and for oleo oil and oleo stearin on the other, it is apparent that if the merchandise is included within the term "tallow" but not within either the term "oleo oil" or the term "oleo stearin," it must be dutiable as tallow.

We hold, therefore, that the merchandise herein is premier jus, a grade of tallow not specially provided for, and that it is dutiable under paragraph 701 of the Tariff Act of 1930 as tallow at one-half of 1 cent per pound. The protests are sustained and judgment will be rendered accordingly.